UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ANA BRYSON,

                             Plaintiff,                              **ORDER**

        -against-                             23 Civ. 381 (VMS)

UBER TECHNOLOGIES, INC., UBER USA,
LLC, and RAISER-NY LLC,

                           Defendant.
------------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

      Presently before the Court is the motion for summary judgment filed by Defendants Uber

Technologies, Inc.; Uber USA, LLC ("Uber"); and Raiser-NY LLC (collectively, "Defendants")

in this motor-vehicle accident case.  See generally ECF Nos. 36-40.  Plaintiff Ana Bryson

("Plaintiff") opposed.  See generally ECF Nos. 41-41-8.  Defendants replied.  See generally ECF

Nos. 42-42-4.  Defendants submitted two notices of supplemental authority, see generally ECF

Nos. 44-45-2, to which Plaintiff was given the opportunity to respond, see 12/30/2025 Order, but

did not do so.[1]  For the reasons discussed below, the Court grants Defendants' motion.  The

Clerk of Court is requested to enter judgment in Defendants' favor and close this case.

---

[1] The Court subsequently entered an Order for "Plaintiff and Defendants to show cause as to why
this action, including Defendants' motion for summary judgment, should not be stayed, and
administratively closed with leave to reopen following resolution of" the related state court
action by Plaintiff against the purportedly negligent driver, Joseph L. Phang (the "Driver"),
captioned Ana Bryson v. Joseph L. Phang, Index No. 506278/2020 (Kings Cnty. Sup. Ct.) (the
"State Court Action"), given the potential for the application of res judicata and collateral
estoppel and for inconsistent outcomes. 2/2/2026 Order.  In response, Defendants noted, inter
alia, "that the state court has already granted Plaintiff's motion for summary judgment on the
issue of liability as against driver Joseph Phang," ECF No. 46 at 1, and Plaintiff responded that
"[t]he underlying State Court Action has been resolved and therefore there is no impediment to
the continuation of the subject matter in the Eastern District of New York," ECF No. 47 at 1.  In
view of this additional information, the Court proceeds to resolve Defendants' motion for
summary judgment herein.

## I.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Jackson v. Fed. Exp., 766 F.3d 189, 193-94 (2d Cir. 2014) (citations omitted).  Motions for summary judgment must include "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," Loc. Civ. R. 56.1(a), and a party opposing the motion must include

> a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried,

Loc. Civ. R. 56.1(b).  Statements of material fact must be supported by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); see Local Civ. R. 56.1(d) (providing that statements of material fact, and responses thereto, "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)").

When "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," inter alia, "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2); see Local Civ. R. 56.1(c) (providing that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly

2

numbered paragraph in the statement required to be served by the opposing party"); Jackson, 766 F.3d at 194 (noting that "[t]he non-moving party need not respond to the motion" but that "a non-response runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted" (citations omitted)).  Nonetheless, "[b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed" and "must determine whether the legal theory of the motion is sound." Jackson, 766 F.3d at 194 (citation omitted); see Fed. R. Civ. P. 56(e)(3) (noting that, when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," inter alia, "grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it").

Although "[t]he movant bears the initial burden of showing that there is no genuine dispute as to a material fact," when "the burden of proof at trial would fall on the nonmoving party, the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." McKinney v. City of Middletown, 49 F.4th 730, 738 (2d Cir. 2022) (citations & quotations omitted).  For the nonmovant to "[d]emonstrat[e] that such issues exist requires the nonmovant to do more than simply show that there is some metaphysical doubt as to material facts," such that, "rather than merely deny the moving party's allegations in a general way, the party opposing summary judgment must present competent evidence that creates a genuine issue of material fact." Id. (citations & quotations omitted).

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS[2, 3]

The Platform Access Agreement (the "Agreement") entered into by the Driver and Uber

states that their relationship is

> solely as independent business enterprises, each of whom operates a separate and
> distinct business enterprise that provides a service outside the usual course of
> business of the other.  This is not an employment agreement and you are not an
> employee of Uber.  You confirm the existence and nature of that contractual
> relationship each time you access our Platform.  We are not hiring or engaging
> you to provide any service; you are engaging us to provide you access to our
> Platform.  Nothing in this Agreement creates, will create, or is intended to create,
> any employment, partnership, joint venture, franchise, or sales representative
> relationship between you and us.  You have no authority to make or accept any
> offers or representations on our behalf.

---

[2] The Court has verified that each of the facts cited herein, which are drawn from Defendants'
statement of undisputed material facts filed pursuant to Local Civil Rule 56.1, see generally ECF
No. 38, are supported by the record support cited therein, in accordance with its obligation to do
so pursuant to Federal Rule of Civil Procedure 56(e)(3) and Jackson.

[3] The Court addresses two evidentiary issues with the parties' submissions.

Local Civil Rule 56.1(d) provides that statements of material fact, and responses thereto, "must
be followed by citation to evidence which would be admissible, set forth as required by Fed. R.
Civ. P. 56(c)."

First, the statements in the first six paragraphs of Defendants' statement undisputed material fact
are supported only by citation to Plaintiff's complaint in this action, see ECF No. 38 ¶¶ 1-6
(citations omitted), which is not admissible evidence in this action, such that the Court cannot
credit such purported facts, see McGowan v. Stanley, No. 23 Civ. 7769, 2024 WL 5038633, at
*2 (2d Cir. Dec. 9, 2024) (reasoning that statements of material fact supported by "references to
[an] . . . unverified complaint . . . do not comply with Local Rule 56.1," such that a district court
may properly conclude that the party "ha[s] not offered admissible evidence" to support such
fact).

Second, Plaintiff submitted various documents and photographs in her opposition to Defendants'
motion, which are untethered to an affidavit or declaration attesting to their contents and their
truthfulness and accuracy.  See generally ECF Nos. 41-1-41-5.  As such, the Court cannot credit
any facts that may be gleaned from such documents and photographs because they do not
constitute competent evidence.  See New York Life Ins. Co. v. Brown, No. 19 Civ. 9437 (MKV),
2021 WL 325857, at *5 (S.D.N.Y. Feb. 1, 2021) (noting that a document could not "be
considered in connection with the present [m]otion [for summary judgment] because it [wa]s
unsworn and ha[d] not been properly authenticated (collecting cases)).

ECF No. 38 ¶ 7 (quoting ECF No. 37-10, Ex. J ¶ 1.1(a)).[4, 5]  The Agreement further states that

Uber "does not and has no right to 'direct or control' independent drivers" and that "Uber does

not mandate when or where an independent driver offers for-hire services and allows drivers to

accept, decline or cancel any ride at their discretion.  Id. ¶ 8 (quoting ECF No. 37-10, Ex. J ¶

1.1(b)).[6]

Defendants "did not control the details of Mr. Phang's work," id. ¶ 9 (citing ECF No. 37-

10, Ex. J. ¶¶ 1.1(a)-(b) & ECF No. 37-9, Ex. I ¶ 19),[7] as he (1) "was in business for himself," id.

(citing ECF No. 37-10, Ex. J. ¶¶ 1.1(a)-(b) & ECF No. 37-9, Ex. I ¶ 19); (2) "determined when,

where and for how long he would utilize the Driver App," id. (citing ECF No. 37-9, Ex. I ¶ 19);

(3) "could provide transportation services anywhere in New York City and other adjacent

localities pursuant to TLC rules and reciprocity agreements," id. (citing ECF No. 37-9, Ex. I ¶

19); (4) "was free to go online and offline as he saw fit, and to accept or decline a trip request at

---

[4] Exhibit J is the Agreement.

[5] Plaintiff "[o]bjects to the Platform Access Agreement," without citation, as "[t]here is no indication in the exhibit as presented that would indicate Joseph Phang read and consented to the same."  ECF No. 41-6 ¶ 7.  Plaintiff's statement is inaccurate, as the declaration of Ben Carroll Senior Manager, Corporate Business Operations, for Uber Technologies, Inc. states that the Agreement, which "was prepared in the regular course of Uber's business[,] . . . is a true and accurate representation of the agreement Joseph Phang accepted on January 8, 2020"; was stored as an electronic record by Uber contemporaneously with its execution"; and "was in Uber's regular course of business to prepare and maintain this agreement."  ECF No. 37-9, Ex. I ¶¶ 1, 16.  Plaintiff's unsupported and conclusory "objection" fails to comply with the requirements of Federal Rule of Civil Procedure 56(c)(1) and Local Civil Rule 56.1(d), and it does not establish a genuine dispute of material fact as to the authenticity of the Agreement.

[6] Plaintiff "[c]oncur[s] to the extent that this information is within the purview of U[ber]," ECF No. 41-6 ¶ 8, and otherwise fails to respond to these facts.  As such, in accordance with Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1(c), these facts are deemed admitted.

[7] Exhibit I is the declaration of Ben Carroll, Senior Manager, Corporate Business Operations, for Uber Technologies, Inc.

his discretion," id. (citing ECF No. 37-9, Ex. I ¶ 19); (5) "was able to cancel a trip request after accepting one," id. (citing ECF No. 37-9, Ex. I ¶ 19); (6) "was not required to wear a uniform or to display any Uber logos, names, or colors on his vehicle, except as required by law," id. (citing ECF No. 37-9, Ex. I ¶ 19); (7) "provided his own equipment and tools, including the smartphone on which he downloaded the Driver App, any navigational tools, and he operated his own vehicle to provide transportation services to his riders," with Defendants "not own[ing], operat[ing], control[ling] or leas[ing] Joseph Phang's vehicle," id. (citing ECF No. 37-9, Ex. I ¶ 19); (8) "was free to use other lead generation services such as the Lyft App or Doordash App, and to engage in any other business or employment activities," id. (citing ECF No. 37-9, Ex. I ¶ 19); (9) did not have to and did not report to a supervisor or attended company meetings," id. (citing ECF No. 37-9, Ex. I ¶ 19); (10) was not "trained" or "taught . . . how to drive" by Defendants, id. (citing ECF No. 37-9, Ex. I ¶ 19); (11) was "not provide[d] with any written or in-person courses, classes, texts, or examinations by Defendants," id. (citing ECF No. 37-9, Ex. I ¶ 19); (12) was not "monitored" with regard to his driving by Defendants and did not have "someone sit in his vehicle supervising him," id. (citing ECF No. 37-9, Ex. I ¶ 19); and (13) "had no set schedule or area that he had to work in to provide trips," id. (citing ECF No. 37-9, Ex. I ¶ 19).[8]

---

[8] Plaintiff only "[o]bjects to the extend that 'did not control' – as essentially this would mean Joseph Phang could do 'whatever he wanted' with respect to U[ber]."  ECF No. 41-6 ¶ 9. Plaintiff's unsupported and conclusory "objection" fails to comply with the requirements of Federal Rule of Civil Procedure 56(c)(1) and Local Civil Rule 56.1(d), and it does not establish a genuine dispute of material fact as to the issue of control.  Further, Plaintiff fails to respond at all to the thirteen specific facts defining the relationship between the Driver and Defendants, such that, in accordance with Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1(c), these facts are deemed admitted.

Defendants "did not pay Joseph Wang a wage or a salary." Id. ¶ 10 (citing ECF No. 37-9, Ex. I ¶ 20).  Instead, the Driver paid "a service fee for use of the Uber app's lead generation services," through which, following completion of a trip, "the trip amount [wa]s charged to the riders' credit card and disbursed to Joseph Phang, less the service fee paid to use the driver version of the Uber app." Id. (citing ECF No. 37-9, Ex. I ¶ 20 & ECF No. 37-10, Ex. J). Defendants did "not withhold taxes," and, if the Driver "met the threshold, Joseph Phang would be issued a 1099," for which he would be "responsible for paying taxes on the money he earn[ed]." Id. (citing ECF No. 37-9, Ex. I ¶ 20 & ECF No. 37-10, Ex. J).  The Driver "did not receive any fringe benefits from Uber, such as health insurance, retirement benefits or vacation." Id. ¶ 10 (citing ECF No. 37-9, Ex. I ¶ 20).[9]

---

[9] Plaintiff only "[o]bject[s] to the notion that U[ber] did not pay Joseph Phang," as "[t]he statement readily admits that Joseph Phang at some point might be given a 1099.  Call it what you may – U[ber] was paying Joseph Phang." ECF No. 41-6 ¶ 10.  Plaintiff's unsupported and conclusory "objection" fails to comply with the requirements of Federal Rule of Civil Procedure 56(c)(1) and Local Civil Rule 56.1(d), and it does not establish a genuine dispute of material fact as to the issue of payment.  Further, Plaintiff fails to respond at all to the remaining statements o fact, such that, in accordance with Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1(c), these facts are deemed admitted.

Defendants "did not own, lease, rent, operate, manage, maintain, supervise, use, control, inspect or repair the vehicle that Mr. Phang was operating ('subject vehicle') on the date of the accident as alleged in the Complaint." Id. ¶ 11 (citing ECF No. 37-9, Ex. I, ¶ 21). Defendants "did not pay for the maintenance, inspection, or repair for the subject vehicle"; "did not pay for the gas for the subject vehicle"; "did not procure insurance for the subject vehicle"; and "did not provide Mr. Phang with any equipment to use in connection with the subject vehicle." Id. (citing ECF No. 37-9, Ex. I, ¶ 21).[10]

## III.    DISCUSSION

The Court first addresses Defendants' motion as to Plaintiff's claim for vicarious liability and then as to Plaintiff's claim for direct liability.[11] For the reasons discussed below, Defendants' motion is granted.

### A.    Vicarious Liability

For the reasons discussed below, Defendants are entitled to entry of summary judgment in their favor on Plaintiff's claim for vicarious liability.

For an employee, "[t]he doctrine of respondeat superior renders a master vicariously liable for a tort committed by his [or her] servant within the scope of employment. Conversely, the general rule is that an employer who hires an independent contractor is not liable for the independent contractor's negligent acts." McHale v. Metro. Life Ins. Co., 86 N.Y.S.3d 600, 603

---

[10] Plaintiff "[c]oncur[s] that U[ber] knows these facts as they are," ECF No. 41-6 ¶ 11, and otherwise fails to respond to the facts. As such, in accordance with Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1(c), these facts are deemed admitted.

[11] On review of Plaintiff's complaint, the Court notes that Plaintiff alleges that the motor vehicle accident "was caused wholly and solely by reason of the negligence of the defendants without any fault or negligence on the part of the plaintiff," and "[t]hat defendants were negligent, careless and reckless in the ownership, operation, management, maintenance, supervision, use and control of the aforesaid vehicle." ECF No. 1-1 ¶¶ 81-82.

(2d Dep't 2018) (citations & quotations omitted).[12]  Determining "whether an employer-employee relationship exists turns on whether the alleged employer exercises control over the results produced, or the means used to achieve the results," with "[c]ontrol over the means [being] . . . the more important consideration." Id. (citation & quotation omitted).  Factors that are "relevant to assessing control include whether the worker (1) worked at his [or her] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule," as well as "[w]hether a person is treated for tax purposes as an independent contractor or designated in a contract as an independent contractor." Meehan v. Cnty. of Suffolk, 40 N.Y.S.3d 494, 496 (2d Dep't 2016) (citations & quotations omitted).  Nonetheless, "[m]inimal or incidental control over a person's work product without direct supervision or input over the means used to complete the work is insufficient to establish a traditional employment relationship." Id. (citations & quotations omitted); McHale, 86 N.Y.S.3d at 603 (reasoning that "[i]ncidental control over the results produced without further indicia of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship" (citations & quotations omitted)).

---

[12] Neither Plaintiff nor Defendants explicitly addresses the choice-of-law question, other than Defendants' conclusory statement that, "[b]ecause this is a federal diversity case, New York's substantive law governs." ECF No. 39 at 10 (citation omitted).  Nonetheless, "[i]n a diversity case such as this one, the choice-of-law rules of New York, the forum state, govern," and, "[u]nder New York choice-of-law rules, where the parties agree that [a certain jurisdiction's] law controls, which includes briefing that "assume[s] that New York law controls," thereby providing "implied consent" to the application of New York law, such agreement or consent "is sufficient to establish choice of law." Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 152 (2d Cir. 2016) (citations & quotations omitted)).  Here, Defendants expressly state that New York law applies here, see ECF No. 39 at 10 (citation omitted), and both Plaintiff and Defendants apply New York law in their briefing, see generally ECF Nos. 39, 41-7 & 42, constituting express or implied consent sufficient to establish New York law as the choice of law for this motion.

Neither the Appellate Division nor the Court of Appeals in New York has addressed whether the relationship between a driver and Defendants (or similar service) is an independent-contractor relationship or an employer-employee relationship.  See State Farm Mut. Auto. Ins. Co. v. Diallo, Index No. 18973/2024, 2026 WL 82409, at *2 (Civ. Ct. Queens Cnty. Jan. 7, 2026) (stating that "there are no appellate cases that have determined [that the driver] . . . must be considered an employee of Uber").[13]  Some New York trial courts have ruled that the nature of the relationship between a driver and Defendants is a question of fact to be determined by a jury.  See, e.g., Ambroise v. Uber Tech. Inc., Index No. 501338/2023, 2026 WL 90186, at *3 (Sup. Ct. Kings Cnty. Jan. 8, 2026) (reasoning that "Uber's documentary and other evidence does not absolutely establish that it cannot be held vicariously liable on the basis of an independent contractor relationship," such that "[t]he facts adduced on this motion warrant sending the issue of an employment-versus-independent contractor relationship to the jury"

---

[13] The First and Second Departments of the Appellate Division has issued some decisions in similar contexts, albeit not directly on point here.

In Sebrow v. Joe & Mike Taxi, Inc., 67 N.Y.S.3d 633 (1st Dep't 2018), the First Department affirmed the grant of summary judgment in favor of the defendant, as the defendant had "made a prima facie showing that [the driver] . . . was not its employee, but rather was an independent contractor, and that it therefore could not be held liable for [the driver's] . . . acts," in view if the defendant's showing "that it leased the taxi to [the driver] . . . , who received no salary, retained his own fares, and had the sole responsibility and control over the manner and means of providing taxi services," such that "[t]here is no basis to hold [the defendant] . . . vicariously liable under Vehicle and Traffic Law § 388 for [the driver's] . . . intentional actions."  Id. at 634-35 (citations omitted).

In Soares v. Rahmatulloev, 227 N.Y.S.3d 276 (1st Dep't 2025), and Uy v. A. Hussein, 131 N.Y.S.3d 70 (2d Dep't 2020), the First Department and the Second Department, respectively, reviewed decisions on motions for summary judgment, concluding that some or all of Defendants were not entitled to entry of summary judgment in their favor because whether the drivers were acting within the scope of employment was a question of fact for the jury.  See Soares, 227 N.Y.S. 3d at 276-77; Uy, 131 N.Y.S.3d at 72.  These decisions appear to assume, without directly addressing, that the drivers were employees.

(citations omitted)).  Other New York trial courts have, to the contrary, concluded that the issue may be resolved on a motion for summary judgment in Defendants' favor.  See, e.g., State Farm Mut. Auto. Ins. Co., Index No. 18973/2024, 2026 WL 82409, at *2-3 (holding that "the plaintiff has failed to raise any question of fact and Uber's motion seeking summary judgment is granted," as "the platform access agreement supports the conclusion that [the driver] . . . is an independent contractor" and as "the only evidence the plaintiff introduces to demonstrate the existence of his status as an employee is the fee arrangement provisions and the arbitration clause," neither of which "impose any control over the way [the driver] . . . was required to do his work that would support any question of fact he was an employee," particularly given that the driver did "not receive a conventional salary"); Bongiovi v. Pulla, Index No. 150935/2023, 2024 WL 2823654, at *9-10 (Sup. Ct. Richmond Cnty. May 31, 2024) (reasoning that "Uber has demonstrated that it exercised only incidental control over [the driver d]efendant . . . and that he was an independent contractor and not an employee," in view of the evidence "that the service Uber provides is lead generation, which merely connects drivers with riders who are looking for a ride and facilitates the payment processing," and that "Uber does not own the vehicles and drivers are responsible for their own schedules, choosing when to accept ride leads," such that entry of summary judgment in the defendant's favor was warranted (citation omitted)).

Here, the admissible evidentiary record is extremely limited, with the only citations to competent evidence in the record in the statement of undisputed material facts, and response thereto, being the Agreement and the declaration of Defendants' employee, as discussed above, see supra Sec. II, such that no genuine dispute of material fact exists as to whether the Driver was an employee or independent contractor of Defendants.

11

The undisputed record before the Court demonstrates that all of the relevant factors weigh in favor of finding that the Driver was an independent contractor.  First, the Driver worked at his own convenience and was not on a fixed schedule, as he "was in business for himself"; "determined when, where and for how long he would utilize the Driver App"; "could provide transportation services anywhere in New York City and other adjacent localities pursuant to TLC rules and reciprocity agreements"; "was free to go online and offline as he saw fit, and to accept or decline a trip request at his discretion"; and "was able to cancel a trip request after accepting one."  ECF No. 38 ¶ 9 (citing ECF No. 37-10, Ex. J. ¶¶ 1.1(a)-(b) & ECF No. 37-9, Ex. I ¶ 19).  Second, the Driver was free to engage in other employment, as he "was free to use other lead generation services such as the Lyft App or Doordash App, and to engage in any other business or employment activities."  Id. (citing ECF No. 37-9, Ex. I ¶ 19).  Third, the Driver did not receive fringe benefits, including "health insurance, retirement benefits or vacation."  Id. ¶ 10 (citing ECF No. 37-9, Ex. I ¶ 20).  Fourth, Defendants "did not pay Joseph Wang a wage or a salary," as, instead, the Driver paid "a service fee for use of the Uber app's lead generation services," through which, following completion of a trip, "the trip amount [wa]s charged to the riders' credit card and disbursed to Joseph Phang, less the service fee paid to use the driver version of the Uber app," and treated the Driver as an independent contractor for tax purposes, as he might be issued a 1099 form if he met the earnings threshold.  Id. (citing ECF No. 37-9, Ex. I ¶ 20 & ECF No. 37-10, Ex. J).  Finally, the Agreement states that the Driver is an independent contractor.  Id. ¶ 7 (quoting ECF No. 37-10, Ex. J ¶ 1.1(a)).

In view of the undisputed factual record described above, no genuine dispute of material fact exists as to whether the Driver was an independent contractor of Defendants.  Because the Driver was an independent contractor and not an employee, Defendants are entitled to entry of

summary judgment in their favor on Plaintiff's claim for vicarious liability.  Meehan, 40

N.Y.S.3d 494, 495-96 (affirming the grant of summary judgment in favor of the ride-service

defendants because the driver of the vehicle involved in a motor-vehicle accident was an

independent contractor and not an employee, such that the ride-service defendants were not

liable for the driver's purported negligence).

### B.    Direct Liability

For the reasons discussed below, Defendants are entitled to entry of summary judgment

in their favor on Plaintiff's claim for direct liability.

Plaintiff's complaint alleges that the motor-vehicle accident "was caused wholly and

solely by reason of the negligence of the defendants without any fault or negligence on the part

of the plaintiff," and "[t]hat defendants were negligent, careless and reckless in the ownership,

operation, management, maintenance, supervision, use and control of the aforesaid vehicle."

ECF No. 1-1 ¶¶ 81-82.  Construing such allegations as a claim for negligent ownership and

operation of the vehicle at issue, New York Vehicle and Traffic Law § 388(1) provides, in

relevant part, that

> [e]very owner of a vehicle used or operated in this state shall be liable and
> responsible for death or injuries to person or property resulting from negligence in
> the use or operation of such vehicle, in the business of such owner or otherwise,
> by any person using or operating the same with the permission, express or
> implied, of such owner.

N.Y. Veh. & Traf. L. § 388(1).  Construing such allegations as a claim for negligent entrustment

of the vehicle at issue, "[a]n owner of a motor vehicle may be liable for negligent entrustment if

[he or she] was negligent in entrusting it to a person [he or she] knew, or in exercise of ordinarily

care should have known, was not competent to operate it."  Shepard v. Power 195 N.Y.S.3d 94,

97 (2d Dep't 2023) (citations & quotations omitted).  As to both claims, where the evidence

indicates that the defendant does not own or control the vehicle at issue, the claims fail. See

Kamal v. Singh, No. 23 Civ. 5498 (HJR), 2025 WL 3012790, at *7-8 (S.D.N.Y. Oct. 28, 2025)

(reasoning that the plaintiff's claims for negligent ownership and operation of a vehicle and

negligent entrustment of a vehicle against Uber Technologies, Inc. could not survive a motion for

summary judgment, in view of the unrebutted evidence that Uber Technologies, Inc. did not own

or control the vehicle (footnote & citations omitted)).

Here, the record reflects a complete dearth of competent evidence supporting Plaintiff's

claims. Rather, the record reflects that the Driver "operated his own vehicle to provide

transportation services to his riders" and that Defendants "did not pay for the maintenance,

inspection, or repair for the subject vehicle"; "did not pay for the gas for the subject vehicle";

"did not procure insurance for the subject vehicle"; and "did not provide Mr. Phang with any

equipment to use in connection with the subject vehicle." ECF No. 38 ¶¶ 9, 11 (citing ECF No.

37-9, Ex. I, ¶¶ 19, 21). Defendants "did not own, lease, rent, operate, manage, maintain,

supervise, use, control, inspect or repair the vehicle that Mr. Phang was operating ('subject

vehicle') on the date of the accident as alleged in the Complaint." Id. ¶ 11 (citing ECF No. 37-9,

Ex. I, ¶ 21); see id. ¶ 9 (citing ECF No. 37-9, Ex. I ¶ 19).[14]

In view of the undisputed factual record described above, no genuine dispute of material

fact exists as to whether the Defendants did not own or control the vehicle at issue, and

Defendants are entitled to entry of summary judgment in their favor on Plaintiff's claim for

direct liability.

---

[14] Although not cited in Defendants' statement of undisputed material facts, attached as an exhibit to Defendants' counsel's declaration is the title and the registration for the vehicle at issue, in the Driver's name, and an affidavit from the Driver filed in the State Court Action attesting to his ownership of the vehicle at issue on the date of the motor-vehicle accident at issue. See generally ECF No. 37-23.

## IV.    CONCLUSION

For the reasons discussed above, the Court grants Defendants' motion.[15]  The Clerk of

Court is directed to enter judgment in Defendants' favor and close this case.

Dated:  Brooklyn, New York
        March 16, 2026

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge

---

[15] The Court notes that, for the first time in her opposition to Defendants' motion, Plaintiff raises that, "[b]efore dismissing this case[,] the Court should be examining if the motion should have ever initially been made according to all agreements with U[ber]," apparently invoking an arbitration provision in the Agreement.  See ECF No. 41-7 at 6.  Assuming arguendo that Plaintiff has standing to invoke such provision, by filing this action and proceeding with this litigation, through discovery and summary-judgment-motion practice, she has waived the right to invoke any such provision.  See Doyle v. UBS Fin. Servs., Inc., 144 F.4th 122, 124 (2d Cir. 2025) (holding that the "[d]efendants knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right" (quotations & citations omitted)).